George N. TURNER et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 3, 1960.

Rehearing Denied Oct. 7, 1960.

Philip Hargett, D. B. Coughlin, Maysville, for appellants.

Woodson T. Wood, Maysville, Howard McCartney, Flemingsburg, for appellee.

PALMORE, Judge.

This is an appeal from a judgment of the Fleming Circuit Court remitting $4,500 of a $5,000 bail bond theretofore ordered forfeited pursuant to Criminal Code of Practice, § 93. The principal and his surety move for an appeal on the ground that the entire amount should have been remitted, and the Commonwealth by cross-appeal contends that the entire sum should be forfeited.

■ The case arises under Criminal Code of Practice, § 98, which provides:

"If, before judgment is entered against the bail, the defendant be surrendered or arrested, the court may, at its discretion, remit the whole or part of the sum specified in the bail bond."

The power conferred by this statute is not absolute, and, as in the case of other discretionary judicial actions, may not be exercised arbitrarily. 6 Am.Jur. 110 (Bail and Recognizance, § 120) ; Turner v. Com., 1916, 171 Ky. 304, 188 S.W. 404. There must, however, be a clear abuse of judicial discretion before the action of the trial court may be set aside upon review by this court. Miller v. Com., 1934, 256 Ky. 379, 76 S.W.2d 41.

■ Illness or physical disability preventing the principal's compliance with the condition of a bail bond by appearing at the prescribed time ordinarily is a sufficient ground for vacation of a forfeiture; but to secure the benefit of sickness as a ground for remission of a forfeiture "it must be shown that the ailment was of such nature as to prevent the principal from appearing, and that he did appear as soon as he was well enough." 6 Am.Jur. 135 (Bail and Recognizance § 179).

■ Except for one technical point raised by the appellants the disposition of these appeals involves the application of the foregoing principles of law to the facts of the case. The technical point is this: Upon forfeiture of the bond and issuance of process against them the principal and surety filed an answer setting up affirmatively the facts on which they rely for relief. The Commonwealth did not file any responsive pleading traversing the affirmative allegations of the answer. Citing Ison v. Com., 1927, 219 Ky. 132, 292 S.W. 746, the principal and surety contend that the statements set forth in their answer must therefore be taken as true.

Criminal Code of Practice, § 94, subd. 3 provides as follows:

"3. Pleadings and Proceedings. No pleadings shall be required on the part of the Commonwealth, but the summons shall be served, and all subsequent proceedings shall be the same as in an ordinary civil action."

The action of the Commonwealth is commenced by the entry of the order forfeiting the bail bond and the issuance of summons requiring the obligors to show cause why judgment should not be rendered against them on the forfeiture. Their response is in the nature of an answer, which they recognized by so styling it in this case. Since no reply was required by CR 7.01, the averments in the answer were taken as denied or avoided. CR. 8.04; Burd v. Com., Ky. 1960, 335 S.W.2d 945. The Ison case,

having been decided before these rules were adopted, is not applicable.

██ The appellant Turner was indicted October 21, 1957, for the felony of maliciously shooting at another with intent to kill (KRS 435.170). On the same day the indictment was returned his trial was set for October 31, 1957, and he immediately executed bond in the penal sum of $5,000. He had been in and around the court room all day during the deliberations of the grand jury and was in a more or less intoxicated condition. He objected to being tried at the same term of court, and when the judge advised him of the trial date an exchange took place in which Turner made a remark to the effect that "You are not going to try me this term of court." Recognizing the influence of alcohol in this conversation and having known the man for some years, the court let this remark pass.

It appears that Turner had suffered from high blood pressure and an arteriosclerotic condition for some years, on account of which he was declared 100% disabled in 1949 by the Veterans' Administration. On Saturday, October 26, 1957, five days before the scheduled date for his trial, he appeared in the office of his attorney and stated that he was suffering headaches and pains in his chest. He claims that he "blacked out" at this time, though the testimony does not indicate that the attorney was aware of that fact, nor was the attorney then aware of Turner's belligerent conduct before the court on October 21. He advised Turner to see his doctor and then return to his office in order to assist in preparing the case for trial. Turner then visited his physician, Dr. W. A. Graham, who diagnosed that he had suffered a coronary occlusion and recommended immediate hospitalization. Though Dr. Graham suggested a local hospital, Turner desired to go to a veterans' hospital because it would save him money. Turner returned to his attorney's office and reported the results of his visit to Dr. Graham, which the attorney confirmed by a telephone call to Dr. Graham. The attorney immediately advised the County Attorney of the circumstances, and on Monday, October 28, appeared in court and moved for a continuance. At this time the facts were brought to the attention of the court, though Dr. Graham's affidavit in support of the motion was not actually filed until October 30, 1957. Upon being apprised of the situation the Commonwealth desired that Turner be examined by another physician, and arrangements were made to that end. However, the physician was unable to go out to the Turner home until after noon, and in the meantime Turner had gone to the Veterans' Hospital in Cincinnati after having called Dr. Graham to his home at about 10 o'clock that morning. On October 31, 1957, with the knowledge that Turner had removed himself from the state, the court overruled the motion for a continuance and ordered the bail bond forfeited.

Turner was released from the hospital and returned to his home in Fleming County on Sunday, November 24, 1957. He was arrested on Saturday, November 30, 1957, and remained in jail for 15 days until the next rule day, at which time the court accepted a new bond secured by cash deposit of $5,000. Turner subsequently was brought to trial on the pending indictment, was found guilty of the lesser offense of shooting in a sudden affray or heat and passion, without previous malice, and was fined $250 (KRS 435.180).

The Commonwealth lays great stress on the fact that Turner chose to go to the Veterans' Hospital in preference to a local hospital, interpreting this circumstance as an indication that his purpose was to remove himself from the jurisdiction of the court and avoid trial. Be that as it may, the evidence is conclusive that he actually was in need of immediate hospitalization and was not in a position to stand trial at the appointed time. His announced predetermination to effect a postponement of the trial date, coupled with the fact that the

medical diagnosis was necessarily based in part on subjective symptoms, certainly justifies a strong suspicion on the part of the court, but is not enough proof to off-set the cold results of the cardiograms taken at the hospital. Therefore, if the disposition of this case rested entirely on the question of whether Turner was really too ill to stand trial on October 31, 1957, this court would be forced to say that the entire amount of the bond should have been remitted. But the illness does not tell the whole story. Turner's defiance of the court on October 21, 1957, lends significance to his failure to resubmit himself to arrest promptly after his return to Fleming County on November 24, 1957. He and his surety were bound to keep themselves advised of the progress of his case (Miller v. Com., 1934, 256 Ky. 379, 76 S.W.2d 41), and it is to be presumed that he knew his bond had been forfeited and he was in the position of a fugitive from justice. It was not enough that he made no effort to conceal himself. His positive duty, either in person or by counsel, was to contact the sheriff or the prosecuting officials in order that he might be placed in custody or a new bond arranged. By allowing a complete remission of the amount of the bond and thus excusing this conduct the trial court would have permitted Turner to flout the authority of the law. On the other hand, since he was eventually brought to trial and there has been no substantial loss to the Commonwealth, a complete forfeiture would have been unduly harsh. Under the circumstances, therefore, we are of the opinion that the trial court did not abuse its discretion in remitting $4,500 and allowing the forfeiture of $500 to stand.

Complaint is made of the trial court's failure to approve a new bond while Turner languished 15 days in jail prior to the next rule day. If he was aggrieved by this inaction, he had a remedy which evidently he did not choose to pursue. Moreover, it cannot be presumed that the trial court did not take this circumstance into ac-count in arriving at the amount of the remission.

The motion for an appeal is overruled, and on cross-appeal the judgment is affirmed.

MONTGOMERY, C. J., dissents.